Martin P. **MARSTON**, Appellee,

v.

R. M. **OLIVER**, Superintendent of the Virginia State Farm, Appellant.

No. 71-1329.

United States Court of Appeals, Fourth Circuit.

Argued June 6, 1973.

Decided Oct. 9, 1973.

Robert E. Shepherd, Jr., Asst. Atty. Gen. of Va. (Andrew P. Miller, Atty. Gen. of Va., Burnett Miller, III, Asst. Atty. Gen. of Va., on brief) for appellant.

James L. Sanderlin, Richmond, Va., court-appointed (McGuire, Woods & Battle, Richmond, Va., on brief) for appellee.

David G. Karro, Roanoke, Va., on brief for Wayne A. Garrett, amicus curiae.

Before HAYNSWORTH, Chief Judge, and RUSSELL and FIELD, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The petitioner in this *habeas* proceeding was convicted in Virginia of the offense of driving a motor vehicle on November 15, 1968, while his driver's license was suspended or revoked. At trial, he, though indigent, was not provided with counsel. After conviction, he received both a prison sentence and a fine. While imprisoned under this sentence, he filed this proceeding. He has since been released from custody. He contends that, although he has served his sentence and paid his fine, his action is not mooted, since his conviction laid him open to collateral consequences of a civil nature, i. e., the possible revocation of his driver's license. As a result of this conviction and his prior record of convictions,[1] the petitioner did become subject to proceedings for the revocation of his driver's license under the Virginia Habitual Offender Act,[2] and proceedings for this purpose were begun in early 1970, as a result of which his driver's license was revoked for a period of ten years. On the factual record, the District Court, 324 F.Supp. 691, found that

---

[1] Between 1957 and 1966 the petitioner had been convicted three times for driving a car while under the influence of intoxicants, five times for reckless driving, and five times for driving while his driver's license was suspended. During this period, he had had his driver's license revoked four times. While the Habitual Offender Act required at least three convictions of any of the above offenses as a basis for revocation of a driver's license, at least one of such convictions had to be subsequent to June 28, 1968, which was the effective date of the Act. The conviction on May 27, 1969, arising out of the November, 1968 offense, was the only one that satisfied this requirement.

[2] Va.Code Ann. Secs. 46.1–387.1–12 (Supp. 1968). For a discussion of the Act, see Huffman v. Commonwealth (1970) 210 Va. 530, 172 S.E.2d 788; Estes v. Commonwealth (1971) 212 Va. 23, 181 S.E.2d 622; McIntosh v. Commonwealth (1972) 213 Va. 330, 191 S.E.2d 791. Under the statute, "a proceeding to revoke an automobile driver's permit or license is a civil and not a criminal proceeding; * * * the revocation is not for the punishment of the offender, but is for the protection of the public in removing from the highways a dangerous driver." (172 S.E.2d at 789).

The general validity of such statutes is reviewed in Annotation, 9 A.L.R.3d 756.

the proceedings had not been mooted by the termination of petitioner's imprisonment, and proceeded to rule invalid the conviction because the petitioner, an indigent, was not afforded counsel. It, however, gave the State leave to retry the petitioner. The State has appealed. We reverse.

■ There is no dispute between the parties that, had the trial occurred after the decision in Argersinger v. Hamlin (1972) 407 U.S. 25, 92 S.Ct. 2006, 32 L. Ed.2d 530, the uncounseled conviction of the petitioner, resulting as it did in a sentence of imprisonment, would have been open to constitutional attack. This case, however, was tried and disposed of prior to *Argersinger* but the District Court prophetically anticipated in its decision that the Supreme Court would, as it shortly thereafter did in *Argersinger,* extend the principle of *Gideon*[3] to misdemeanor convictions where the sentence entailed imprisonment. The decision of the District Court thus rests ultimately on the principles later enunciated in *Argersinger* and the rights of the petitioner must be resolved on the basis of that authority and, more particularly, on whether that authority is to be applied retroactively. It is important, however, to note that petitioner does not rely on *Argersinger,* applied retroactively, to relieve him of imprisonment or to secure his release from custody. What he is seeking by this proceeding is to be relieved of the possibility in a civil proceeding, under State procedures, of the loss of his driver's license on account of such conviction. In short, the issue

posed by the petitioner on this appeal is whether *Argersinger* is to be applied retroactively in order to relieve a defendant, not of the actual sentence imposed on him, but of the collateral consequences of such a conviction on a civil right of the defendant. We are of opinion that *Argersinger* is not to be so applied retroactively.

■ The determination whether in this unique situation, *Argersinger* is to be applied retroactively, must begin with an analysis of the scope of the principle enunciated by the Supreme Court in *Argersinger.* *Argersinger* is a considerably narrower decision than *Gideon.* In *Gideon,* the felony conviction, whatever the penalty resulting, whether fine or imprisonment or both, is declared invalid, if uncounseled. In *Argersinger,* on the other hand, the Court only invalidated any imprisonment flowing from the conviction; it left intact and outstanding the conviction itself.[4] The decision seems to have been carefully framed to assure that no one, whether convicted of a misdemeanor or felony, should suffer inprisonment as a result of an uncounseled conviction. It was the loss of liberty by the individual, with which it was concerned and towards which it directed its command. But it withheld relief in misdemeanor convictions for anything other than loss of liberty. Specifically, it did not extend its umbrella of invalidity over convictions involving fines, despite the fact that such a sentence might, especially in the case of an indigent, involve real hardship and privation, and despite the fact that, so far as the collateral consequences on the de-

---

3. Gideon v. Wainwright (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.

4. This is made clear in the concluding paragraph of Justice Douglas' opinion (407 U.S. at 40, 92 S.Ct. at 2014):
"The run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of 'the guiding hand of counsel' so necessary when one's liberty is in jeopardy."

Justice Powell, in his opinion, concurring in the result, summarizes the majority holding thus (407 U.S. at 53, 92 S.Ct. at 2020):
"* * * If counsel is not appointed or knowingly waived, no sentence of imprisonment for any duration may be imposed."
Justice Powell, also, noted that the holding of the Court made a clear distinction in its decision between the loss of liberty and any other rights, which we would conclude would embrace such collateral effects as a loss of one's driving license. *See* pp. 51–52 of 407 U.S., 2006 of 92 S.Ct.

**708**

fendant's right to the continued use of his driver's license would be the same, whether his sentence was a fine or one of imprisonment. In sum, *Argersinger* purported to excise from the misdemeanor conviction only those consequences that related to loss of liberty and imprisonment. So far as its direct or collateral consequences are the loss of liberty on the part of the defendant, *Argersinger* applies, and while it is perhaps unnecessary to this decision, we are of opinion that it applies retroactively. But, where it does not carry with it these collateral consequences of imprisonment but merely lays the defendant open to a civil proceeding wherein a civil right may be involved, we are of opinion that neither the purpose nor limited scope of the decision in *Argersinger* suggests that its principle should be applied retroactively.

Cottle v. Wainwright (5th Cir. 1973) 477 F.2d 269, which gave retroactive application to *Argersinger,* illustrates the distinction we would make. That case dealt with a probation revocation hearing in which the uncounseled misdemeanor conviction was urged as the basis for revocation. The conviction, if available as a basis for revocation, would have meant the automatic and immediate recommitment to prison of the defendant. Under those circumstances, where the immediate loss of liberty on the part of the defendant would result from the uncounseled conviction, the Court very properly applied *Argersinger* retroactively. In so doing, the Court was applying *Argersinger* to the very situation against which the decision was directed, *i. e.,* the *imprisonment* of the defendant on account of an uncounseled conviction. That, however, is not our situation, where the only collateral consequence is either the right to a driver's license or the right of continued exercise of one already granted.[5]

■ Not only does it seem that *Argersinger* was not intended to apply

retroactively to collateral consequences of a civil character as a result of an uncounseled misdemeanor conviction; its retroactive application in this context would not comport with the standards generally applied in determining the retroactivity of criminal decisions. Fundamental to a determination of retroactivity is the effect that such a determination will have on the administration of justice. Stovall v. Denno (1967), 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Adams v. Illinois (1972) 405 U.S. 278, 284, 92 S.Ct. 916, 31 L.Ed.2d 202. In upholding the retroactivity of *Argersinger* in the factual context of the *Cottle Case,* the Court dismissed the argument that a retroactive application would seriously affect the administration of justice with the observation that, " * * * With regard to the great bulk of misdemeanor convictions invalidated by retroactive application of the *Argersinger* rule any issue pertaining thereto will, almost by definition, be moot." (477 F.2d at 274). But, if *Argersinger,* applied retroactively, is to open up traffic convictions terminated by service of sentence—which is the situation here—to attack for the sole, collateral purpose of providing a basis for invalidating a revocation or suspension of a driver's license, then the entire administrative procedure under both point-system statutes and habitual offender acts, as they were conducted prior to *Argersinger,* will be caught up in an impossible net of repetitive prosecutions, imposing an intolerable burden on traffic courts, if offending drivers are not to be turned loose upon the highways. The difficulties that such a decision would entail are well illustrated by this very case.

■ The conviction, against which the petitioner directs his challenge in the present petition, occurred on May 27, 1969. It was based on a charge that he had operated a motor vehicle "with revoked or suspended license." In its

---

5. Matthews v. Florida (5th Cir. 1972) 463 F.2d 679, is contrary to the result reached by us but we find it unpersuasive.

decision invalidating the proceedings, the District Court did not void that conviction absolutely but, even though the sentence had been served and no additional sentence could be imposed under *Pearce*,[6] it authorized the State, within a reasonable time, to retry the defendant, such retrial, if successful, to be had for the sole purpose of validating a revocation of the defendant's driving license. This was in accordance with standard procedure. *See* Mordecai v. United States (1969), 137 U.S.App.D.C. 198, 421 F.2d 1133, 1137. That, it would seem, at least specifically, would impose no particular hardship on the State in this case and would have little effect on the State's program of improving highway safety. The offense was a simple one, easily proved. And there was little doubt of the defendant's guilt. At his trial in County Court, he had actually plead guilty. He appealed for a new trial in Circuit Court apparently because he thought he might thereby secure a lesser sentence. But, if that conviction is reopened retroactively because of its collateral civil consequences and the defendant is given a new trial, he will undoubtedly attack the charge on the ground that the suspension of his license rested in turn on convictions of "driving while intoxicated" on August 21, 1957 and March 23, 1966, contending that those convictions, resulting in sentences already served were uncounseled and were themselves invalid. Assuming that those convictions were uncounseled and that, in those circumstances, the Court would do as the District Court has done here, i. e., permit a retrial where counsel would be furnished the defendant, it would mean that two more trials will become necessary in order to give a basis for invalidating the defendant's driving license. But this will not end the procession of trials. The petitioner is actually challenging the fact that, as a result of his traffic convictions, he came within the statutory qualifications of an habitual traffic offender, liable for revocation of his driver's license for ten years. To meet that requirement, the petitioner must have been convicted at least an additional time. But the petitioner will undoubtedly claim that this third conviction, too, was uncounseled and it will be necessary to go back and try an offense that happened, as of time of retrial, almost ten years ago. To secure the revocation of the petitioner's driver's license in this case, if *Argersinger* is to be given the retroactive effect urged by the petitioner, the State would thus be forced to retry the petitioner at least three times, even though no sentence could result from the convictions that might follow. It must be remembered, too, that a holding that *Argersinger* is to be given retroactive application where any collateral consequences of a civil nature may have resulted, would not be restricted only to habitual offender revocations; it would apply equally to all revocations or suspensions imposed under the point-system. And the number of such suspensions or revocations is myriad. It is doubtful that the traffic courts, burdened as they already are, are adequate to carry this additional burden. Yet the alternative is to allow a large body of criminally careless drivers, whose past conduct represented a serious hazard to the traveling public, to resume their use of the public highways. When the careless driver accounts for more deaths annually than was the death toll in the Vietnam war for a like period, such an alternative seems entirely unacceptable.[7]

---

6. North Carolina v. Pearce (1969) 395 U.S. 711, 89 S.Ct. 2089, 23 L.Ed.2d 656.

7. In 1968, traffic accidents account for 54,862 deaths and 4,400,000 instances of personal injuries. Actually, "[M]otor vehicle accidents account for almost as many deaths in this country as all other categories of accidents combined * * *." People v. Samuel (1971) 29 N.Y.2d 252, 327 N.Y.S.2d 321, 277 N.E.2d 381, 384.

For specific reference to the situation in Virginia, *see*, Note, The Virginia Habitual Offender Act, 26 Wash. & L.Rev. 271 (1969).

We would not like to be misunderstood: We find no quarrel with the result reached in *Cottle,* where the effect of the uncounseled prior misdemeanor conviction was the automatic and immediate loss of liberty on the part of the defendant. In such a situation, we, too, would find *Argersinger* retroactive. Where we would not give it retroactive application is in those cases, like that here, in which the conviction provides merely the possibility of a basis for a loss of a civil right in a subsequent civil proceeding but involves no warrant for imprisonment and where any retroactive application would result in a substantial frustration of a valuable public policy of barring the public highways to criminally careless drivers who represent a peril and hazard to the traveling public.

Reversed.