**Curtis MAYS, Petitioner,**

v.

**William HARRIS, Sheriff, Respondent.**

**Civ. A. No. 73-C-21-C.**

United States District Court,
W. D. Virginia,
Charlottesville Division.

Oct. 1, 1973.

Second Opinion Dec. 1, 1973.

William M. McClenny, Amherst, Va., for petitioner.

Sam Eggleston, Commonwealth's Atty., Lovingston, Va., for respondent.

### OPINION and JUDGMENT

DALTON, Chief Judge.

Mays, a Virginia state prisoner, seeks a writ of habeas corpus to redress misdemeanor convictions which resulted in his classification as a habitual offender pursuant to Va.Code Ann. § 46.1–387.1 et seq. (Repl.Vol.1972), and two subsequent convictions pursuant to § 46.1–387.8, for operating a motor vehicle while classified a habitual offender. The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 2254.

On April 18, 1963, petitioner was charged with the first of four violations which eventually resulted in a court order declaring him a habitual offender. He plead guilty to the offense of operat-

ing a motor vehicle while under the influence of intoxicants and received a $200.00 fine and 30 day suspended sentence. He entered a plea of guilty on May 9, 1968, to a charge of operating a motor vehicle without an operator's license and was fined $10.00. His first imprisonment resulted from a guilty plea on July 24, 1969, to a charge of driving while intoxicated. A $200.00 fine was imposed and petitioner was sentenced to 30 days in jail. On September 4, 1969, he again plead guilty, this time to driving with a revoked operator's license, and was fined $100.00 and sentenced to 10 days in prison. These misdemeanor convictions resulted in a court order on March 6, 1970, declaring petitioner a habitual offender. On June 4, 1973, petitioner was convicted in the Circuit Court of Nelson County, Virginia, of having violated, on December 4 and 10, 1972, § 46.1–387.8, to wit, operating a motor vehicle while classified a habitual offender. Conviction pursuant to this section mandates imprisonment for not less than one nor more than five years, and no portion of the sentence may be suspended.

Petitioner challenges his convictions in light of the Supreme Court's recent ruling in Argersinger v. Hamlin, 407 U. S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). He alleges that at the time of his misdemeanor convictions he was indigent and therefore unable to retain counsel; and that sentence was imposed without the assistance of counsel or the intelligent waiver thereof. It is his contention that retroactive application of *Argersinger* requires that the misdemeanor convictions be declared invalid as in violation of the Sixth Amendment to the U.S. Constitution.

■ Petitioner has failed to exhaust the remedies available in the courts of Virginia, however, he need not do so. 28 U.S.C. § 2254 provides that exhaustion is not required whenever there exist "circumstances rendering such process ineffective to protect the rights of the prisoner." The Supreme Court of Virginia has recently ruled that *Argersinger* should only be given prospective application. Potts v. Superintendent of Va. State Penitentiary, 213 Va. 432, 192 S.E.2d 780 (1972). Petitioner's misdemeanor convictions occurred prior to the decision in *Argersinger*, hence, according to the Virginia Supreme Court's determination, petitioner's claims regarding right to counsel are without merit. Since state relief is foreclosed to the petitioner he is thereby relieved from the necessity of pursuing state remedies. Wood v. Superintendent Caroline Correctional Unit, 355 F.Supp. 338 (E.D.Va. 1973); Herndon v. Superintendent Va. State Farm, 351 F.Supp. 1356 (E.D.Va. 1972); Cordle v. Woody, 350 F.Supp. 479 (E.D.Va.1972). Accordingly, this action is ready for determination on the merits.

■ The Fourth Circuit Court of Appeals has recently ruled that the decision in *Argersinger*, holding that an accused may not be deprived of his liberty as the result of a criminal prosecution, whether felony or misdemeanor, where he was denied assistance of counsel, should be applied retroactively. Marston v. Oliver, Mem. 485 F.2d 705, Dec. No. 71–1329 (4th Cir., Jan. 7, 1972). This court is bound by the Fourth Circuit's determination.[1] Therefore, the only question re-

---

1. The court is fully aware that our Court of Appeals has indicated that memorandum decisions, such as *Marston*, are of limited precedential value. In Jones v. Superintendent, Virginia State Farm, 465 F.2d 1091, 1094 (4th Cir. 1972), the Court of Appeals declared:

We concede, of course, that any decision is by definition a precedent, and that we cannot deny litigants and the bar the right to urge upon us what we have previously

done. But because memorandum decisions are not prepared with the assistance of the bar, we think it reasonable to refuse to treat them as precedent within the meaning of the rule of stare decisis. We prefer that they not be cited to us for an additional reason: since they are unpublished and generally unavailable to the bar, access to them is unequal and depends upon chance rather than research.

maining for disposition is whether, as asserted by respondent, petitioner waived his right to counsel as a consequence of his failure to request counsel and his imposition of guilty pleas to the misdemeanor charges.

 The guiding principle in analyzing alleged waivers of constitutional rights was established by the Supreme Court in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937) [held applicable to asserted waivers of the right to counsel in state criminal proceedings in Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1944)]. When considering purported waivers, courts must "indulge every reasonable presumption against waiver" and refrain from presuming "acquiescence in the loss of [this] fundamental rights." 304 U.S. at 464, 58 S.Ct. at 1023. Furthermore, the right to counsel is not dependent upon a demand for assistance by the defendant. Carnley v. Cochran, 369 U.S. 506, 513, 82 S.Ct. 884, 8 L.Ed. 2d 70 (1961). Petitioner's failure to demand assistance, therefore, is not indicative of a waiver, especially when at the time of his prior misdemeanor convictions, there was no constitutional right which he could have demanded. It is clearly unpermissible to presume waiver from a silent record. Rather, "the record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intel-

ligently and understandingly rejected the offer. *Anything less is not waiver.*" 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1961) (Emphasis supplied). If the record does not explicitly reflect an intelligent waiver, the state has the burden of proving the defendant intelligently waived his right to counsel.

The record in petitioner's case reveals only that he was not represented by counsel.[2] There is no documentation of an offer of counsel or a waiver thereof. Rather, the only evidence presented in this regard, is petitioner's uncontradicted testimony during the preliminary hearing for his state criminal trial, that he was never advised of his right to counsel and never waived his right.

 Petitioner's guilty plea, in itself, does not constitute an intelligent waiver. Although the Supreme Court, in discussing waiver of the right to counsel, has indicated the entry of a guilty plea may raise a fact issue,[3] no such issue is evident here. The Supreme Court has recognized that expert advice in determining whether or not to plead guilty is invaluable and has indicated that "an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney." Brady v. United States, 397 U.S. 742, 748 n.6, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970); see United States ex rel. Urbano v. Yeager, 323 F.Supp. 774, 777 (D.N.J.1971). Additionally, in

Nevertheless, this court feels obligated to adhere to the principle enunciated in *Marston*. Although it is of minimum precedential value, it is the only available indicator of the Fourth Circuit's position on the question of the retroactivity of *Argersinger*. Additionally, the problem of inequality is eliminated because both parties were aware of the *Marston* decision. See Herndon v. Superintendent, Va. State Farm, 351 F.Supp. 1356 (E.D.Va.1972).

The Fourth Circuit has heard reargument on *Marston* and a decision should be forthcoming shortly. Therefore, the uncertainty in this area will soon be resolved.

2. During petitioner's preliminary hearing in the Circuit Court of Nelson County, Virginia, on charges of operating a motor vehicle after he had been declared a habitual offender, his prior misdemeanor convictions were

discussed. Petitioner testified he was not represented by counsel, and the Commonwealth's Attorney confirmed, stating that the records showed petitioner did not have counsel.

3. In *Carnley* the Court stated that it had recognized in Rice v. Olson that,

although the Fourteenth Amendment would not countenance any presumption of waiver from the appearance of the accused without counsel and the silence of the record as to a request, the entry of the guilty plea might have raised a fact issue as to whether the accused did not intelligently and understandingly waive his constitutional right.

369 U.S. at 515, 82 S.Ct. at 890. The Court noted a hearing was necessary to resolve the question since the facts were in dispute.

considering respondent's claim of waiver, it is necessary to recall that petitioner's convictions occurred at a time when state courts were under no constitutional obligation to provide lawyers to indigent defendants in misdemeanor cases. Consequently, the state court was under no obligation to advise petitioner of his right to counsel, simply because indigents in misdemeanor cases had no constitutional right to counsel. It is unrealistic to assume that a guilty plea, without more, constitutes an intelligent and knowing waiver under these circumstances. Such reasoning would be entirely contrary to the bias against presuming waiver established by *Johnson v. Zerbst* and its progeny. Instead, the petitioner having established he was not assisted by counsel and having presented uncontroverted statements that he was never advised of his right, nor waived it, the burden was on respondent to produce evidence of affirmative action by petitioner which constituted an intelligent and knowing waiver. No such evidence has been proffered.

■ Under the circumstances of this case no useful purpose would be served by an evidentiary hearing. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1962). Petitioner has presented uncontroverted allegations that he did not waive assistance of counsel. The state court proceeding revealed that the record discloses only that petitioner was not represented and further, the Commonwealth's Attorney indicated that this was the only evidence available regarding waiver. The existing evidence establishes a prima facie case for relief and there appears to be no evidence available to respondent to rebut it. Therefore, Mays is entitled to relief on his habeas petition. The conviction, on July 24, 1969, for driving while intoxicated, which resulted in a thirty day sentence, and the conviction on September 4, 1969, for driving with a revoked operator's license, which resulted in a ten day sentence, are both constitutionally invalid. In order to be declared a

habitual offender the Virginia statute requires "three or more convictions" of listed offenses within a ten year period. Va.Code Ann. § 46.1–387.2 (Repl.Vol. 1972). Invalidation of the two convictions in 1969 leaves single convictions in 1963 and 1968. Consequently, petitioner can no longer be termed a habitual offender within the meaning of the statute. Hence, the order of March 6, 1970, declaring him a habitual offender must be declared a nullity, and his subsequent convictions for violating § 46.1–387.8 on December 4 and 10, 1972, annulled.

The state may at its own option choose to retry Mays within sixty days of this date. In the meantime, upon all records of the convictions which have been declared invalid it shall be noted that said convictions have been found by this court to be null and void.

It is so ordered; and the purposes of this action having been accomplished, it is now stricken from the docket.

## ON PETITION TO RECONSIDER

This is the second opinion this court has rendered regarding the petitioner, Curtis Mays. Initially, the court granted him habeas relief from misdemeanor convictions which resulted in his classification as a habitual offender pursuant to Va.Code Ann. § 46.1–387.1 et seq. (Repl.Vol.1972), and two subsequent convictions pursuant to § 46.1–387.8, for operating a motor vehicle while classified a habitual offender. Civil No. 73–C–21–C (W.D.Va., Oct. 1, 1973). Petitioner's habitual offender classification and the subsequent convictions were declared null and void because two of the underlying misdemeanor convictions were constitutionally invalid according to Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

May's initial misdemeanor conviction resulted from a guilty plea on April 18, 1963, to the offense of operating a motor vehicle while under the influence of intoxicants. He received a 30 day suspended sentence and was fined $200.00. On May 9, 1968, he again pled guilty,

this time to a charge of operating a motor vehicle without an operator's license, and was fined $10.00. Petitioner's first imprisonment ensued a guilty plea on July 24, 1969, to a charge of driving while intoxicated. A $200.00 fine was imposed and he was sentenced to 30 days in jail. On September 4, 1969, he once again pled guilty, this time to driving with a revoked operator's license, and was fined $100.00 and sentenced to 10 days in prison. These misdemeanor convictions resulted in a court order on March 6, 1970, declaring petitioner a habitual offender. As a consequence of this classification, he was prohibited from operating a motor vehicle in the State of Virginia for a period of ten years. On June 4, 1973, petitioner was convicted in the Circuit Court of Nelson County, Virginia, of having violated, on December 4 and 10, 1972, § 46.1–387.8 of the Virginia Code, to wit, operating a motor vehicle while classified a habitual offender.

In declaring the misdemeanor convictions of July 24, 1969 and September 4, 1969 constitutionally invalid, this court relied on the Fourth Circuit's memorandum opinion in Marston v. Oliver, No. 71–1329, 485 F.2d 705 (4th Cir., Jan. 7, 1972), which held that *Argersinger* should be applied retroactively to prior uncounseled misdemeanor convictions. Accordingly, absent a knowing and intelligent waiver, an individual who had been imprisoned due to an uncounseled misdemeanor conviction imposed previous to *Argersinger* could attack his conviction pursuant to *Marston*. The respondent failed to present any evidence indicating that Mays had waived his right to counsel during either of the misdemeanor proceedings in 1969. Furthermore, since the evidence established a prima facie case for relief and there was no evidence available to respondent to rebut the existing evidence, the petitioner was accorded habeas relief without a prior evidentiary hearing.

Subsequent to its memorandum opinion in *Marston* the Fourth Circuit agreed to hear reargument on its determination. Eight days after this court granted relief to petitioner, the Fourth Circuit reconsidered its initial determination and rendered a second opinion qualifying its previous determination. No. 71–1329 (4th Cir., Oct. 9, 1973). The respondent then petitioned this court to reconsider its opinion of October 1, 1973 in light of the second *Marston* opinion, and an order granting respondent's motion was entered on October 23, 1973.

Soon thereafter the United States Supreme Court rendered a per curiam opinion which eliminated any doubt which might have ensued the second *Marston* opinion. In Berry v. City of Cincinnati, 414 U.S. 29, 94 S.Ct. 193, 38 L.Ed.2d 187 (1973), the Supreme Court ruled that "[t]hose convicted prior to the decision in *Argersinger* are entitled to the constitutional rule enunciated in that case; . . . if they allege and prove a bona fide, existing case or controversy sufficient to invoke the jurisdiction of a federal court." Id. To establish the case or controversy necessary to invoke federal jurisdiction petitioner must "show that under either state or federal law further penalties or disabilities can be imposed on him as result of the [misdemeanor judgment[s]." St. Pierre v. United States, 319 U.S. 41, 43, 63 S.Ct. 910, 87 L.Ed. 1199 (1943). The collateral legal consequences which will ensue the challenged misdemeanor convictions are evident. See Sibron v. New York, 392 U.S. 40, 50–58, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Carafas v. LaVallee, 391 U.S. 234, 237–238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Ginsberg v. New York, 390 U.S. 629, 633–634 n. 2, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). *Argersinger*, therefore, must be retroactively applied to May's misdemeanor convictions in 1969. Accordingly, this court confirms its judgment of October 23, 1973 invali-

dating the two 1969 misdemeanor convictions which resulted in the imprisonment of the petitioner. In order to be declared a habitual offender the Virginia statute required three or more convictions of listed offenses within a ten year period. § 46.1–387.2. Invalidation of the two convictions in 1969 leaves single convictions in 1963 and 1968. Consequently, petitioner's classification as a habitual offender is nullified. Consistent with the court's prior opinion, the order of March 6, 1970 declaring petitioner a habitual offender must therefore be annulled, and the subsequent convictions imposed by the Court of Nelson County, Virginia in 1973 declared null and void.[1]

The court grants the state the option, if it so chooses, to retry Mays within sixty days of the date of this opinion. Therefore, this order is effective as of February 1, 1974. The court having fully decided the issues, this action is stricken from the docket with the court reserving the right to reinstate the case.

## ORDER

## ON MOTION TO AMEND JUDGMENT

The motion of the respondent to this court pursuant to Rule 59 of the Federal

---

1. Although not necessary for this determination, the court opines that the petitioner would be entitled to habeas relief pursuant to the principles enunciated in the second *Marston* opinion. In *Marston* the petitioner attacked a misdemeanor conviction for driving a motor vehicle while his driver's license was suspended, alleging that though indigent at the time of conviction, he was not provided with counsel. He contended that, although he had served his sentence and paid his fine, his action was not mooted, since his conviction subjected him to the collateral consequences of having his driving permit revoked pursuant to the Virginia Habitual Offender Act.

In denying relief the Fourth Circuit delimited the retroactivity of *Argersinger*.

In sum, *Argersinger* purported to excise from the misdemeanor conviction only those consequences that related to loss of liberty and imprisonment. So far as its direct or collateral consequences are the loss of liberty on the part of the defendant, *Argersinger* applies, and while it is perhaps unnecessary to this decision, we are of opinion that it applies retroactively. But, where it does not carry with it these collateral consequences of imprisonment but merely lays the defendant open to a civil proceeding wherein a civil right may be involved, we are of opinion that neither the purpose nor limited scope of the decision in *Argersinger* suggests that its principle should be applied retroactively.

Marston v. Oliver, 485 F.2d at 708.

The court recognized the strong policy against allowing "criminally careless drivers, whose past conduct represented a serious hazard to the traveling public, to resume their use of the public highways." *Id.* 485 F.2d at 709. Further, it reasoned if *Argersinger* is applied so as to

open up traffic convictions terminated by service of sentence . . . for the sole, collateral purpose of providing a basis for invalidating a revocation or suspension of a driver's license, then the entire administrative procedure under both point-system statutes and habitual offender acts, as they were conducted prior to *Argersinger*, will be caught up in an impossible net of repetitive prosecutions, imposing an intolerable burden on traffic courts, if offending drivers are to be turned loose upon the highways.

Id. 485 F.2d at 708.

May's situation, however, differs from *Marston's*. May's misdemeanor convictions resulted not merely in a civil disability, but in addition, imprisonment. In this situation, the equities weigh in favor of requiring the state to retry him according to the principles established in *Argersinger* before depriving him of his liberty. This result is consistent with the reasoning expressed in *Marston*.

We would not like to be misunderstood. We find no quarrel with the result reached . . . where the effect of the uncounseled prior misdemeanor conviction was the automatic and immediate loss of liberty on the part of the defendant. In such a situation, we, too, would find *Argersinger* retroactive. Where we would not give it retroactive application is in those cases, like that here, in which the conviction provides merely the possibility of a basis for a loss of a civil right in a subsequent civil proceeding but involves no warrant for imprisonment and where any retroactive application would result in a substantial frustration of a valuable public policy of barring the public highways to criminally careless drivers who represent a peril and hazard to the traveling public.

Id. 485 F.2d at 710.

Rules of Civil Procedure, to alter and amend its final judgment granting a writ of habeas corpus to petitioner on December 1, 1973, having been taken under advisement and duly considered by this court, it is hereby ordered that said motion be and it is hereby denied, but the time in which the Commonwealth may, at its option, retry Mays is extended to March 28, 1974.

 As indicated in its prior ruling, the court is of the opinion that Berry v. City of Cincinnati, 414 U.S. 29, 94 S.Ct. 193, 38 L.Ed.2d 187, No. 73–5245 (U.S. Nov. 5, 1973) mandates that Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) be retroactively applied to petitioner's misdemeanor convictions thereby authorizing the issuance of a writ of habeas corpus according to 28 U.S.C. § 2254. Petitioner has alleged "a bona fide, existing case or controversy sufficient to invoke the jurisdiction" of this court. 94 S.Ct. 194 (1973). The question of the validity of the prior misdemeanor convictions is not moot because the sentence imposed thereon had been completely served prior to the filing of the petition for a writ of habeas corpus. *See* Glover v. State of North Carolina, 301 F.Supp. 364 (E.D.N.C.1969). *Contra,* United States v. Flanagan, 305 F. Supp. 325 (E.D.Va.1969). Petitioner's present imprisonment derives from the misdemeanor convictions, therefore, there are sufficient collateral legal consequences flowing from the challenged convictions to constitute the custody necessary to initiate the use of the writ. *See* LaFond v. Quatsoe, 325 F.Supp. 1010 (E.D. Wis.1971); *cf.* Tucker v. Peyton, 357 F. 2d 115 (4th Cir. 1966); Thomas v. Cunningham, 335 F.2d 67 (4th Cir. 1964).

The court grants the Commonwealth the option, if it so chooses, to retry Mays within sixty days of the date or this order. Therefore, this order is effective as of March 28, 1974.

The court having reconsidered and fully decided the issues, this action is stricken from the docket with the court reserving the right to reinstate the case if appropriate to so do.