Stanley Eugene **LINKOUS**, Petitioner,

v.

Honorable William S. **JORDAN**, Judge, Circuit Court for Montgomery County, Virginia, and Vern Hill, Commissioner, Virginia Division of Motor Vehicles, Respondents.

Civ. A. No. 75–0109.

United States District Court,
W. D. Virginia,
Roanoke Division.

Sept. 29, 1975.

14.  Frankfurter, "Some Reflections on the Reading of Statutes," *supra*, 30 Harv.L.Rev. at 531.

**1176**

Edward Jasie, New Castle, Va., for petitioner.

Robert E. Shepherd, Jr., Stuart Bateman, Asst. Attys. Gen., Richmond, Va., for respondents.

## OPINION AND JUDGMENT

DALTON, District Judge.

The Commonwealth of Virginia has asked the court to review our previous order in this case, in which we indicated that the plaintiff has appeared to state a prima facie case for habeas corpus relief. Briefly, the case is this. The plaintiff has on his driving record four convictions for traffic violations, each a misdemeanor. He has been declared an habitual offender under Virginia's Habitual Offender Act, Va.Code 46.1–387.1 et seq., and has lost his driver's license for ten years. He has now attacked that revocation on the ground that his previous misdemeanor convictions are void because he was not represented by counsel in those trials.

Originally, we denied the defendants' motion to dismiss. The defendants argued that the plaintiff has not been and will not be "in custody" as a result of the state's revocation of his license, and that a writ of habeas corpus is therefore inappropriate for his relief. We rejected that argument on the basis of the Fourth Circuit's opinion in *Mays v. Harris*, Civ.No. 74–1409 (June 25, 1975), in which the court said that habeas corpus was the proper means to attack the revo-

cation of one's license since that revocation was a collateral consequence of the earlier convictions. However, the Fourth Circuit later withdrew its first *Mays* opinion [hereinafter *Mays I*] and issued a second opinion [hereinafter *Mays II*].[1] *Mays II* was devoid of any of the language which we used as authority to hold that habeas corpus was appropriate in this case. Furthermore, the Fourth Circuit withdrew all of the language of *Mays I* on which the plaintiff depended to establish a claim upon which relief could be granted. We have granted the defendants' motion to reconsider, and will decide whether *Mays II* completely deprives the plaintiff of authority for his claim for habeas corpus relief.

It is best to begin our reconsideration by briefly discussing the cases which we believe to provide the precedents for our decision here. In 1972, the United States Supreme Court decided that no person could be imprisoned as a result of a conviction for a misdemeanor if he had not been represented by counsel at his trial for that misdemeanor. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). The Fourth Circuit interpreted this case strictly, limiting its application to the imprisonment which the misdemeanor defendant faced; *Argersinger*, according to the Fourth Circuit, "only invalidated any imprisonment flowing from the conviction; it left intact and outstanding the conviction itself." *Marston v. Oliver*, 485 F.2d 705, 707 (4 Cir. 1973). The Supreme Court then decided that *Argersinger* should be applied retroactively, announcing that "[t]hose convicted prior to the decision in *Argersinger* are entitled to the constitutional rule enunciated in that case . . . if they allege and prove a bona fide, existing case or controversy sufficient to invoke the jurisdiction of a federal court." *Berry v. Cincinnati*, 414 U.S. 29, 29–30, 94 S.Ct. 193, 194, 38 L.Ed.2d 187

1. 523 F.2d 1258 (4 Cir. 1975).

(1973). In a decision after *Berry,* the Fourth Circuit indicated that it would stick to its *Marston* holding, that *"Argersinger* excises from the uncounseled misdemeanor conviction only those consequences, direct or collateral, which relate to loss of liberty or imprisonment." [2] *Morgan v. Juvenile & Dom. Rel. Ct., Halifax County,* Va., 491 F.2d 456, 457 (1974). The two *Mays* decisions followed *Morgan* by about 18 months.

The question which we must decide is whether or not *Berry* merely extended the strict *Argersinger* rule—voiding the imprisonment but not the conviction of an uncounseled misdemeanor defendant—retroactively, or whether *Berry* actually expanded *Argersinger* by providing that misdemeanor convictions, whose immediate and direct effect was the imprisonment of the misdemeanants, are totally void. *Mays I* adopted the latter view and provided authority for holding that misdemeanants who received prison sentences without counsel could prevent any later attempt to use those convictions as a basis for the imposition of civil penalties like the one in this case. *Mays II,* however, provides no such authority, and the Fourth Circuit's withdrawal of *Mays I* reinstates *Morgan* as the current binding authority in this case, *Morgan,* decided in light of *Berry,* reiterated the strict interpretation of *Argersinger* that the Fourth Circuit first espoused in *Marston: Argersinger* permits the conviction of uncounseled misdemeanor defendants, and prohibits only their imprisonment, as either a direct or a collateral consequence of their conviction.

We apply that principle to the facts of this case. The plaintiff has alleged only that he has lost his license to drive; he has not alleged that he faces incarceration because of his previous misdemeanor convictions. Since he does not face imprisonment, he cannot invoke *Argersinger* in his defense. Without *Argersinger,* he has no authority for his claim that the revocation of his license is improper. In short, he has not stated a claim upon which relief can be granted. It could be argued that the plaintiff does face imprisonment if he drives in violation of Virginia's prohibition, for if he does so he can be punished by a term in jail. Va.Code § 46.1–387.8. In *Mays II* the Fourth Circuit considered and rejected that argument, not because such imprisonment cannot be considered a collateral consequence of the previous convictions, but because the plaintiff's violation of the Commonwealth's injunction against his driving would amount to his own adjudication of his own case, which has been improper at least since *Walker v. Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). We hold, therefore, that under *Argersinger* and its progeny the plaintiff is required to show that he faces actual imprisonment as a consequences of his previous uncounseled misdemeanors. The plaintiff has made no such allegation, and has therefore failed to state a claim upon which we can grant relief.[3] We

2. In *Morgan* the court did not explain whether there is a difference between "loss of liberty" and "imprisonment." Those terms appear to have been used exactly as they were used in *Marston,* upon which *Morgan* depended, and in *Marston* the court appeared to use "loss of liberty" and "imprisonment" as synonyms. Specifically, the language from *Morgan* which is quoted in the text above would be nearly a direct quotation of *Marston* if it were not for the substitution of the disjunctive for the conjunctive; *Marston* said that *"Argersinger* purported to excise from the misdemeanor conviction only those consequences that related to loss of liberty *and* imprisonment." *Marston* at 708 (emphasis added). In the context in *Marston* from which that quotation is taken, the "and" appears to imply interchangeable or synonymous usage. We believe that the use of "or" in the *Morgan* opinion is likewise supposed to imply synonymity.

3. The court readily admits that this result is unfortunate. Everyone knows that driver's licenses are important these days—to some people, "essential in the pursuit of a livelihood," the Supreme Court has said. *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589,

grant the defendants' motion to dismiss, and order the case stricken from the docket.

The clerk is ordered to send copies of this decision to the counsel of record for each party.

29 L.Ed.2d 90 (1970). In absolute terms, imprisonment may be a greater loss of liberty than the revocation of a driver's license. But if a revocation lasts for 10 years, it could certainly be considered a more serious hardship than, say, a few days in jail, so it seems anomalous to have to say that a person is constitutionally protected against even the tiniest jail term, but not against a decade's suspension of driving privileges. Mr. Justice Powell mentioned this very problem in his concurring opinion in *Argersinger*:

> The rule adopted today does not go all the way. It is limited to petty-offense cases in which the sentence is some imprisonment. The thrust of the Court's position indicates, however, that when the decision must be made, the rule will be extended to all petty-offense cases except perhaps the most minor traffic violations. If the Court rejects on constitutional grounds, as it has today, the exercise of any judicial discretion as to need for counsel if a jail sentence is imposed, one must assume a similar rejection of discretion in other petty-offense cases. It would be illogical—and without discernible support in the Constitution—to hold that no discretion may ever be exercised where a nominal jail sentence is contemplated and at the same time endorse the legitimacy of discretion in "non-jail" petty-offense cases which may result in far more serious consequences than a few hours or days of incarceration.

407 U.S. at 51, 92 S.Ct. at 2019 (Powell, J., concurring in the result).

Nevertheless, the state of the law seems to require the conclusion that we have reached, and we disagree with those who argue that *Berry* permits the expansion predicted by Mr. Justice Powell above. The *Mays I* language which the Fourth Circuit withdrew well illustrates that argument:

> In *Berry* . . . the Court stated that a pre-*Argersinger* misdemeanant was "entitled to the constitutional rule enunciated in that case" if he could "allege and prove a bona fide, existing case or controversy sufficient to invoke the jurisdiction of a federal court." 414 U.S. at 29–30 [94 S. Ct. 193]. In explanation of "case or controversy" the Court cited three habeas corpus decisions holding that a petitioner could still challenge his conviction after full service of his sentence so long as there remained potential for "collateral consequences" from the conviction. In explanation of "the constitutional rule" of *Argersinger* the Court cited decisions on retroactive application of Gideon indicating that uncounseled felony convictions were wholly "void." . . . The clear import of the Court's *Berry* statements and citations is that a pre-*Argersinger* misdemeanant who received a prison sentence without counsel is entitled not only to relief from any remaining sentence, but to have his conviction voided for all purposes.

*Mays I* at 4–5. We sympathize with this result, but we disagree with the interpretation of *Berry*. The language in *Berry* which is the subject of this debate says at 414 U.S. 29–30, 94 S.Ct. at 194:

> Those convicted prior to the decision in *Argersinger* are entitled to the constitutional rule enunciated in that case, *Kitchens v. Smith*, 401 U.S. 847 [91 S.Ct. 1089, 28 L.Ed.2d 519] (1971); *Williams v. United States*, 401 U.S. 646, 653 and n. 6 [91 S.Ct. 1148, 1152, 28 L.Ed.2d 388] (1971) (opinion of White, J.); *Burgett v. Texas*, 389 U.S. 109, 114 [88 S.Ct. 258, 261, 19 L.Ed.2d 319] (1967); cf. *Adams v. Illinois*, 405 U.S. 278 [92 S.Ct. 916, 31 L.Ed.2d 202] (1972), if they allege and prove a bona fide, existing case or controversy sufficient to invoke the jurisdiction of a federal court. *Sibron v. New York*, 392 U.S. 40, 50–58 [88 S.Ct. 1889, 1896–1900, 20 L.Ed.2d 917] (1968); *Carafas v. LaVallee*, 391 U.S. 234, 237–238 [88 S. Ct. 1556, 1559–1560, 20 L.Ed.2d 554] (1968); *Ginsberg v. New York*, 390 U.S. 629, 633–634, n. 2 [88 S.Ct. 1274, 1276–1277, 20 L.Ed.2d 195] (1968).

We read that decision as saying merely that defendants may invoke *Argersinger's* rule retroactively if they can show that they are still suffering direct or collateral consequences of their underlying convictions—they do not need to be incarcerated in order to be able to state a federally-cognizable claim and benefit from the *Argersinger* rule. However, that rule itself remains the same—it voids imprisonment and nothing else. The Court's reference to other case law appears to be intended to illustrate only the jurisdictional issue. We doubt that the Supreme Court would undertake a major expansion of a constitutional doctrine in such an oblique manner.