Michael ALEXANDER *v.* STATE of Arkansas

CR 75-109                                    527 S.W. 2d 927

Opinion delivered October 13, 1975

*B. Michael Easley,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty.

Gen., for appellee.

CONLEY BYRD, Justice. The controlling issue on this appeal by Michael Alexander is whether an uncounseled misdemeanor conviction permitted under *Argersinger v. Hamlin,* 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972), because only a fine was assessed, can be used as the sole basis to revoke a ten year suspended sentence entered upon a negotiated plea to burglary and grand larceny charges.

The record shows that on January 23, 1973, appellant was charged with burglary and grand larceny. After a determination of indigency, a lawyer was appointed to represent appellant, and on January 26, 1973, he entered a negotiated plea of guilty and received a ten year suspended sentence on both charges. Thereafter, on February 6, 1973, appellant was arrested on assault and battery charges instituted by Charles Tittle, appellant's back door neighbor. On February 7, 1973, appellant pled not guilty and was tried upon the charge before the municipal court without benefit of counsel after the municipal judge had announced that upon conviction a fine only would be assessed. The fine assessed by the municipal court was $25.00 plus $16.50 costs for a total of $41.50. Appellant laid the fine out in jail. Within two hours after appellant was released from jail, he was picked up on a warrant issued on the State's request for a revocation of the suspended ten year sentence. Of course, at that time it was too late to take an appeal from the municipal court. Counsel was appointed for appellant at the revocation hearing, but at that hearing the trial court revoked the ten year sentence upon the sole ground that the municipal court conviction violated the good behavior condition of the suspended sentence. The trial court would not permit evidence to be introduced by appellant showing the facts giving rise to the municipal court conviction.

Appellant did not appeal from the revocation but later filed a post-conviction proceeding pursuant to Criminal Procedure Rule #1. At that hearing he testified that he went over to Tittle's house to ask Tittle to leave appellant's wife alone, that while there Tittle backed his car across appellant's foot and then he hit Tittle.

In considering the right of an indigent to the appointment of counsel in misdemeanor cases, the United States Supreme Court in *Argersinger* v. *Hamlin, supra,* ·commented as follows:

"We must conclude, therefore, that the problems associated with misdemeanor and petty offenses often require the presence of counsel to insure the accused a fair trial. MR. JUSTICE POWELL suggests that these problems are raised even in situations where there is no prospect of imprisonment. *Post,* at 48. We need not consider the requirements of the Sixth Amendment as regards the right to counsel where loss of liberty is not involved, however, for here petitioner was in fact sentenced to jail. And, as we said in *Baldwin* v. *New York,* 399 U.S., at 73, 'the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or 'petty' matter and may well result in quite serious repercussions affecting his career and his reputation.'

We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial."

\* \* \*

"Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel. He will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts.

The run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of 'the guiding hand of counsel' so necessary when one's liberty is in jeopardy."

Obviously, *Argersinger v. Hamlin,* did not involve the collateral use of a municipal court conviction and in the language used, the authorities are divided as to whether an uncounseled municipal court conviction involving only a fine can be used to revoke a suspended sentence or to enhance one's length of imprisonment on a second or subsequent conviction. See *Cottle v. Wainwright,* 477 F. 2d 269 (5th Cir. 1973); *Marston v. Oliver,* 485 F. 2d 705 (4th Cir. 1973); *State v. Reagan,* 103 Ariz. 287, 440 P. 2d 907 (1968) and *State v. Kirby,* 33 Ohio Misc. 48, 289 N.E. 2d 406 (1972).

As pointed out by a law review writer in *Argersinger v. Hamlin and The Collateral Use of Prior Misdemeanor Convictions of Indigents Unrepresented By Counsel at Trial,* 35 Ohio St. L.J. 168 (1974), one can syllogistically reason that since a municipal court conviction without counsel and involving only a fine is permitted under *Argersinger v. Hamlin,* then the conviction is valid and can be used collaterally to revoke a suspended sentence, even though the proximate effect of the conviction, as in this case, is to send the indigent to prison for ten years. This line of reasoning, of course, would soon vitiate the theory on the right to counsel as stated in *Argersinger v. Hamlin,* and would appear to be contrary to the last paragraph of the opinion which states:

> "The run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of 'the guiding hand of counsel' so necessary when one's liberty is in jeopardy."

The latter approach appears to us to be the more logical approach to one's right to counsel. As demonstrated here, the appellant did not know that his mere conviction for Assault and Battery in municipal court would result in the revocation of his suspended sentence, and the municipal judge did not know that appellant had a suspended sentence. Consequently, we interpret *Argersinger v. Hamlin* as holding that an uncounseled municipal court conviction involving only a fine, and valid for that purpose, cannot be collaterally used to deprive a person of his liberty.

All of the authorities recognize that an indigent is entitled to the appointment of counsel at a revocation hearing, but if we accept the State's argument here, the obvious question arises: Why should counsel be appointed at this late date, when the uncounseled municipal court conviction itself amounts to a revocation of the suspended sentence? To ask the question, as a practical matter, is but to answer the question that it was at the municipal court that the indigent needed counsel. Therefore, it follows that an uncounseled municipal court conviction cannot be used for the purpose of revoking a suspended sentence as the net effect thereof is "the actual deprivation of a person's liberty" without "the guiding hand of counsel." Of course, this does not mean that the responsible officials cannot show that the facts giving rise to the municipal court conviction are sufficient themselves to revoke the suspended sentence.

Reversed and remanded with directions to set aside the revocation of the suspended sentence.

HARRIS, C.J., FOGLEMAN, J., dissenting; ELSIJANE ROY, J., not participating.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent. Even if we should eventually reach the result the majority does, in a proper case, I submit that this is not such a case, that *Argersinger* v. *Hamlin,* 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972), does not mandate the result reached, and that the authorities cited do not support it. I would affirm the judgment.

It should be noted that appellant was represented by counsel when his sentence was suspended and when the suspension was revoked. He was prosecuted by city officials on the charge of assault and battery. There is nothing to show that the municipal judge or any of the city officials were aware of Alexander's suspended sentence or that there was any reason to expect them to have been. There is nothing to indicate that the prosecuting attorney or any county law enforcement officer was aware of the charge of assault and battery until after the conviction. It was quite natural that the state did not move to revoke the suspension of sentence until

after the assault and battery conviction had become final. Even though it is not required that the state await the final disposition of a charge that would violate the terms of suspension of a previous sentence before moving to revoke the suspension, it is considered the better practice to do so. Alexander knew, or should have known, when he was tried in the municipal court that a finding that he was guilty of assault and battery would jeopardize his continued liberty under the suspension of sentence. So far as we know, he is the only one in the courtroom who did. Yet there is nothing to show that he called this matter to that court's attention when he proceeded to trial without the assistance of counsel. The idea that he did not have any reason to know that an assault and battery was not good behavior seems preposterous to me.

*Argersinger* does not operate to invalidate Alexander's conviction of assault and battery. This is clearly recognized by the writer of *Argersinger v. Hamlin and the Collateral Use of Prior Misdemeanor Convictions of Indigents Unrepresented by Counsel at Trial*, 35 Ohio St. L. J. 168 (1974), even though its author bitterly bewails that fact, sharply criticizes the U.S. Supreme Court for not so holding, and says that the court's reasoning and its holding do not coalesce. That author says that the holding is narrow and does nothing more than bar a jail sentence. She says:

> ****It fails to speak to the constitutionality of the underlying conviction. **** (p. 169)

> **** Yet it is the sentence that determines whether counsel is constitutionally required. **** (p. 174)

> **** Therefore, the Court's focus on sentencing cannot be explained by asserting the Court concluded that *only* uncounseled misdemeanor trials resulting in loss of liberty are inherently unconstitutional. (p. 175)

> **** Because *Argersinger* was limited to sentences of imprisonment, a distinction must be made between convictions which result in imprisonment and those which do not. **** (p. 176)

These collateral uses of previous convictions to enhance punishment should be disallowed if the previous conviction is constitutionally invalid under *Argersinger*. **** (p. 178)

**** *Burgett* [*Burgett* v. *Texas,* 389 U.S. 109 at 114-16, 88 S. Ct. 258, 19 L. Ed. 2d 319] and *Tucker* [*United States* v. *Tucker,* 404 U.S. 443 at 447-48, 92 S. Ct. 589, 30 L. Ed. 2d 592] indicate that constitutionally invalid convictions constitute an erroneous record which may not be used collaterally. Since *Argersinger* held that an uncounseled misdemeanor conviction which results in imprisonment is an unreliable determination of guilt, and therefore constitutionally invalid, it follows that such convictions may not be used collaterally as the basis for the revocation of probation, parole, or a suspended sentence. The revocation should be vacated and reconsideration given without reference to any invalid convictions. (p. 179).

**** Although no court has directly dealt with the revocation of a *suspended sentence* based on invalid misdemeanor convictions, a similar result should follow since the circumstances are sufficiently analogous to probation and parole revocations. Thus a misdemeanor conviction obtained in violation of the *Argersinger* rule should be restricted from indirectly resulting in loss of liberty. (p. 180)

Under *Argersinger* uncounseled misdemeanor convictions of indigents are still constitutionally valid if imprisonment is not imposed. **** (p. 182)

**** One approach would place no restriction on the use of convictions not invalidated by *Argersinger*. The argument may be framed in syllogistic fashion: Uncounseled misdemeanor convictions which do *not* result in imprisonment are constitutional. Constitutionally obtained convictions may be used collaterally. Therefore, collateral use of uncounseled misdemeanor convictions not resulting in imprisonment is proper. This argument is based on a rigid interpretation of the Court's holding in *Argersinger*. Although the major premise of this syllogism is presently accurate, no Supreme Court deci-

sion has specifically held that uncounseled misdemeanor convictions which do not result in imprisonment are constitutional. Instead, their constitutionality is upheld only by default — the *Argersinger* court having refused to consider the issue. Even so, this argument is not without merit, for it accurately, though narrowly, portrays the current status of the law. (p. 183)

There is, however, the *Argersinger* Court's concern about the effect of its decision on the administration of justice. Requiring that any misdemeanor conviction must be counseled in order for it to result, directly or indirectly, in loss of liberty effectively extends the right to counsel in all misdemeanor cases. This is exactly what the Court refused to do in *Argersinger*. The pre-trial problems would be magnified; in each misdemeanor trial the decision whether to appoint counsel would have to be made not only on the basis of whether imprisonment would be an available sentencing alternative, but also on the basis of whether, if convicted and only fined, the conviction would have a potential collateral effect on liberty. Such a predetermination would be an administrative nightmare and would in effect stimulate a general appointment of counsel except for the most minor charges. Thus the apparent desire of the Court to avoid the burden of a broad extension of the right to court-appointed counsel would be severely compromised. (p. 184)

In *Cottle* v. *Wainwright*, 477 F. 2d 269 (5 Cir., 1973), the court made a distinction between a conviction without assistance of counsel where a jail sentence was imposed and one where there was no jail sentence. A parole revocation was under consideration there. That court held that a parole could not be revoked on the basis of prior invalid convictions and that, since Cottle's first misdemeanor conviction without assistance of counsel did not result in his imprisonment, the rule in *Argersinger* did not apply and this conviction was not tainted and could be considered. On the other hand, the court held that a second such conviction, which did result in a sentence of imprisonment, was constitutionally invalid and could not be considered.

*Marston* v. *Oliver,* 485 F. 2d 705 (4 Cir., 1973) involved the possible use of a conviction which resulted in a prison sentence for the revocation of a driver's license. It was conceded that, had this conviction occurred after *Argersinger,* it would have been open to constitutional attack. The court was there dealing only with the question of retroactive application of *Argersinger* to relieve the convicted person of collateral consequences of the conviction on a civil right. The statement that *Argersinger* would apply to loss of liberty which is either a direct or collateral consequence of the uncounselled conviction is purely dictum and inconsistent with that court's apparent approval of the decision in *Cottle* v. *Wainwright,* supra.

*State* v. *Reagan,* 103 Ariz. 187, 440 P. 2d 907 (1968) was decided long before *Argersinger.* It did not involve the same questions. In Arizona the rule of *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1962) had been extended to "serious offenses," i.e., misdemeanors which the superior court determines to be serious "under the particular circumstances". The *Argersinger* court did not extend the *Gideon* rule so far.

In *State* v. *Kirby,* 33 Ohio Misc. 48, 289 N.E. 2d 406 (1972) the court did consider *Argersinger.* It, however, applied *Gideon* and *Argersinger* on the premise that the Ohio statutes involved made earlier misdemeanor convictions "serious offenses". Even though the Ohio court made no distinction, it should be noted that one of the two previous convictions resulted only in a fine and the other resulted in a six-month workhouse sentence. The Ohio Statute involved made a *second* conviction a felony. Sec. 3719.50, 3719.99 (N).

I would affirm the judgment in this case.

I am authorized to state that the Chief Justice joins in this dissent.