Arthur M. ALMEIDA, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

David J. LUCEY, Registrar of Motor Vehicles, Defendant.

Civ. A. No. 73–4189–T.

United States District Court, D. Massachusetts.

Argued Feb. 21, 1974.

Decided March 15, 1974.

———◆———

Robert W. Hagopian, Wrentham, Mass., for plaintiffs.

Christopher H. Worthington, Asst. Atty. Gen., for defendant.

Before CAMPBELL, Circuit Judge, and CAFFREY and TAURO, District Judges.

## OPINION

LEVIN H. CAMPBELL, Circuit Judge.

This action was brought under 42 U. S.C. § 1983 praying for an injunction barring the defendant Registrar of Motor Vehicles from enforcing the provisions of M.G.L. c. 90, § 24. Pursuant to plaintiff's request and the provisions of 28 U.S.C. § 2284, a three-judge court has been convened, and a hearing held on plaintiff's prayer for a preliminary injunction and on defendant's motion to dismiss. Also before the court is plaintiff's motion for summary judgment.

As we are of the opinion that plaintiff has failed to state a claim upon which relief may be granted, F.R.Civ.P. 12(b), we allow the defendant's motion to dismiss, having already denied the plaintiff's request for preliminary injunction. We do not reach the plaintiff's motion for summary judgment.

Plaintiff's material allegations are as follows: He is a Massachusetts resident. He sues for others similarly situated. He was charged on November 21, 1973, in the District Court of Western Norfolk, Wrentham, Massachusetts, with driving under the influence of intoxicating liquor,[1] an offense carrying a possible maximum sentence of two years imprisonment and "automatic one-year suspension of one's driver's license."[2] He moved the court for a jury trial, but was turned down. The Commonwealth put in its evidence, but plaintiff remained silent and presented no evidence. He was convicted and fined, and "appealed" for a trial *de novo* by jury pursuant to M.G.L. c. 278, § 18. Plaintiff further alleges that he is an indigent who depends upon his license for his livelihood and that its loss will cause him great damage and irreparable injury.

Plaintiff lists two alternative constitutional claims: (1) that suspension by the Registrar under the statute constitutes an unconstitutional penalty on the right to trial by jury because of the Massachusetts two-tier trial *de novo* system; and (2) the procedure violates due process by depriving plaintiff of his license to drive, a valuable property right, without a hearing prior to suspension.[3]

To discuss plaintiff's first point it is necessary to examine what plaintiff re-

1. We were advised at the hearing that he was also charged with, and later convicted of, operating to endanger, a separate offense under M.G.L. c. 90, § 24.

2. M.G.L. c. 90, § 24(b), provides as follows: "A conviction [for driving while under the influence] . . . shall be reported forthwith by the court or magistrate to the registrar, who shall revoke immediately the license or the right to operate of the person so convicted, and no

appeal, motion for new trial or exceptions shall operate to stay the revocation of the license or right to operate."
If the prosecution in its later stages results in acquittal, the Registrar is authorized to return the license. M.G.L. c. 90, § 24(c).

3. There are further assertions relative to plaintiff's claim that he sues on behalf of a class. We do not refer further to those in view of our conclusion that he has failed to state a claim.

fers to as the two-tier Massachusetts court system. *See generally* K. B. Smith, 30 Massachusetts Practice: Criminal Practice and Procedure (1970). In Massachusetts, a criminal defendant not charged with a major crime is first tried in a district or municipal court. The prosecution is initiated by a sworn complaint which is served upon the accused. In motor vehicle causes a defendant, upon timely motion, is entitled to a "show cause" hearing before issuance of any process based on the complaint. M.G.L. c. 90C, § 1. There is no jury and there is no regularly assigned court reporter; however, the defendant is entitled to a reporter at his own expense. M.G.L. c. 221, § 91B. Otherwise the proceeding is a full criminal trial, presided over and determined by a member of the judiciary. The defendant is afforded all the rights customarily associated with a criminal court proceeding, such as the right to remain silent, to be represented by counsel, to subpoena witnesses, and to confront and cross examine his accusers. The burden of proving guilt beyond a reasonable doubt is on the Commonwealth. If the defendant is convicted, he may "appeal" to the Superior Court where he will be afforded a *de novo* jury trial. M.G.L. c. 278, §§ 2, 18. In Massachusetts, such a *de novo* jury trial may be obtained even on offenses which do not carry the penalty of imprisonment and might, in some jurisdictions, be considered so minor as not to require a jury trial. *See* Commonwealth v. Hesser, Mass.App., 307 N.E.2d 10 (1974).

Plaintiff's counsel contends that the Massachusetts two-tier system violates the federal constitution, citing Callan v. Wilson, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223 (1888) and Duncan v. Louisiana, 391 U.S. 145, 158 n. 30, 181–182, n. 21, 194, 88 S.Ct. 1444, 20 L.Ed.2d 491, 522 (1968). He further argues that by tying the license removal to the allegedly improper "first" trial, a defendant is placed in an impossible position: to save his license he must give up his right to remain silent or, at least, not participate fully in the district court proceeding.

We think it by no means clear that the Massachusetts two-tier system is unconstitutional. Callan v. Wilson, *supra*, considered only a two-tier arrangement in the federal system. Its implications, if any, for the judiciary of a state are unclear. *Cf.* Colten v. Kentucky, 407 U. S. 104, 114, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). The Massachusetts Supreme Judicial Court has in the past sustained the present system's constitutionality. Jones v. Robbins, 74 Mass. (8 Gray) 329, 341 (1857); Mann v. Commonwealth, 1971 Mass.Adv.Sh. 1027, 271 N.E.2d 331 (1971). Counsel advises us that the question will be presented once more to the Massachusetts Supreme Judicial Court in April.

 However, we need not pass on the point, even assuming that principles of comity would allow us to do so at this time. *Cf.* Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970).[4]

Even if the Massachusetts court structure violates the Sixth Amendment, plaintiff may not obtain injunctive relief against the defendant Registrar. The question before us is simply whether the due process clause of the Fourteenth Amendment permits a state to revoke a driver's license after the driver —in a proceeding such as that furnished in the District Court of Western Norfolk—was found to have been driving while under the influence of intoxicating liquor. The answer is plainly yes. Driving under the influence constitutes reasonable cause for revocation of a license. For a determination adequate to support revoking a license, a non-jury district court proceeding provides all the necessary elements of due process. *See* Bell v. Burson, 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L.Ed.2d 90 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Raper v.

---

4. In the instant case, the most appropriate forum to challenge the two-tier system appears to be the Superior Court, where plaintiff's "appeal" is pending.

Lucey, 488 F.2d 748 (1st Cir. 1973). A jury trial is not required. A license is, of course, a valuable right which cannot be revoked without cause and procedural fairness. But plaintiff does not contend that proof of driving while intoxicated is not a sufficient cause to revoke a driving license, nor does plaintiff contend that a license may not be administratively revoked for cause prior to exhaustion of criminal remedies nor without a jury trial. Due process, insofar as it applies to the revocation of a license, simply requires reasonable notice and an opportunity for a fair hearing before an impartial decision-maker. That and more is afforded by the Massachusetts district court proceeding. The possible invalidity of the two-tier system because of its alleged interference with the Sixth Amendment right to a jury trial has nothing whatever to do with the adequacy of the district court proceeding as a predicate for revocation of a driver's license. *See* Marston v. Oliver, 485 F.2d 705 (4th Cir. 1973).

Our brother TAURO is of the opinion that a Registry administrative hearing would be preferable to a judicial hearing, even though the latter, because of the presumption of innocence and heavier burden of proof would seem to be more favorable to a defendant than a civil proceeding. While reasonable policy arguments may be advanced for one or the other, we are aware of nothing in the Constitution requiring the Massachusetts legislature to select one procedure in preference to the other. Plaintiff does not allege that his trial was unfairly conducted, that his procedural rights were ignored, or, indeed, that he was innocent of the charge. Both plaintiff and the dissenting member concede that a license may be revoked after a preliminary administrative hearing upon a finding of intoxication; we are unable to see what constitutionally significant opportunities such a hearing would afford which are presently denied. Nor are we able to find anything inherently unreasonable or arbitrary in the Registrar's reliance upon findings made by an independent body such as a court. *Cf.* Moran v. Bench, 353 F.2d 193 (1st Cir. 1965) (Aldrich, Chief Judge).

■ Plaintiff argues that tying the license revocation to the district court trial forces his hand at the trial, compelling him to disclose his defense in advance of his jury trial. This, he says, lessens the value of his Sixth Amendment right. However, the same result would occur if the Registry held a separate administrative hearing on the question of revocation. If the motorist failed to defend, he would in all probability lose his license. The Constitution does not guarantee the right to retain a license until all criminal charges stemming fron the use or abuse thereof have gone to a jury.

The Motion to Dismiss is allowed.

TAURO, District Judge (dissenting).

Plaintiff's complaint specifically challenges the constitutionality of Massachusetts two-tier trial de novo system. Alternatively, plaintiff asserts that the automatic revocation of a driver's license following "conviction" in the district court and pending "appeal" in the Superior Court is violative of due process.

In allowing defendant's motion to dismiss under Fed.R.Civ.P. 12(b), the majority has determined that plaintiff's complaint is clearly without any merit. 2A Moore's Federal Practice ¶ 12.08, at 2271. I disagree and therefore must dissent.

For the reasons set out below, I would stay this case pending a forthcoming decision of the Supreme Judicial Court with respect to the constitutionality of the two-tier system.

While I can agree with the majority that it is "by no means clear that the Massachusetts two-tier system is unconstitutional," (majority opinion p. 111) I do not feel that the constitutionality of the Massachusetts compulsory two-tier system is beyond question. See Callan v. Wilson, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223 (1888); Duncan v. Louisiana, 391 U.S. 145, 194, 88 S.Ct. 1444, 20 L. Ed.2d 491, 522 (1968). I do not agree

that Jones v. Robbins, 74 Mass. (8 Gray) 329 (1857) and Mann v. Commonwealth, 1971 Mass.Adv.Sh. 1027, 271 N.E.2d 331 (1971) stand for the proposition that "the Massachusetts Supreme Judicial Court has in the past sustained the present system's constitutionality." (majority opinion p. 111) On the contrary, the Massachusetts Supreme Judicial Court has never squarely faced the issue as to whether the Massachusetts two-tier system passes federal constitutional muster.

In *Jones,* Chief Justice Shaw, writing for a divided court, held the two-tier system was not in violation of the *Massachusetts* Constitution. It is of some significance that this decision predated by 111 years *Duncan,* which held the Sixth Amendment applicable to the states through the Fourteenth Amendment.

In *Mann* the Supreme Judicial Court had before it only the question of whether a defendant could constitutionally receive a higher sentence after a trial de novo in the Superior Court than he received when sentenced in the district court. The right to a jury trial in the first instance was not in issue. That portion of the opinion which could be interpreted as indicating general support of the two-tier system itself is clearly dicta.

Similarly, Lemieux v. Robbins, 414 F.2d 353 (1 Cir. 1969), cert. denied 397 U.S. 1017, 90 S.Ct. 1247, 25 L.Ed.2d 432, cannot be read as supporting the Massachusetts two-tier system. In *Lemieux,* the Circuit Court was concerned with the Maine two-tier system which differs significantly from that in Massachusetts in that it is not compulsory. In Maine a defendant may plead not guilty, waive a hearing, and obtain a Superior Court trial in the first instance. Maine Dist. Ct.Crim.Rule 40. In Massachusetts, a defendant may not waive trial at the district court level.

The majority goes on to say, without citing supporting authority, that even if the Massachusetts two-tier system were found to be unconstitutional the plaintiff would still be unable to prevail because the defendant received due process by having a hearing before a district judge who found him guilty. This overlooks the important point that the registrar's action in revoking the license under M.G.L. c. 90, § 24 is not based on any evidence or underlying factors that may have been before the district court. The registrar's action is based *solely* on the docket entry of conviction, one which would clearly be a nullity should the Supreme Judicial Court determine the two-tier system to be unconstitutional. The registrar has no discretion to look behind that docket entry.

The United States Supreme Court has strictly limited the use of convictions later held to be unconstitutional. See, e. g., Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) (a conviction obtained in violation of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, cannot be introduced in a prosecution under a recidivist statute); United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (uncounseled convictions cannot be considered by sentencing judge); Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) (uncounseled convictions cannot be used to impeach defendant's credibility). In granting defendant's motion to dismiss the majority in effect holds that a district court conviction, although set aside as being unconstitutional, would nonetheless retain sufficient validity and viability to serve as the *sole* basis for the deprivation of such a vital liberty as a driver's license.[1] I can find no legal authority to support such a proposition and, therefore, am not prepared to agree with the majority that the issue is foreclosed beyond any doubt.[2] Compare Holland v. Parker, 354

---

1. See Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Raper v. Lucey, 488 F.2d 748 (1 Cir. 1973).

2. Marston v. Oliver, 485 F.2d 705 (4 Cir. 1973), cited at p. 112 of the majority's opinion, does not support the majority's proposi-

F.Supp. 196 (D.S.D.1973), where a three-judge court held that an arrest leading to an automatic statutory revocation of a driver's license must be a lawful one.

I would agree wholeheartedly that a valid conviction of driving under the influence would constitute adequate grounds for a legislative mandate depriving the registrar of any discretion not to revoke a license. But I do not agree that the sole basis for such revocation can be a conviction which has been declared unconstitutional.[3]

The majority position that, even if the two-tier system is unconstitutional, the defendant still is entitled to no relief because the district court hearing necessarily afforded him all the due process to which he was entitled actually begs the very question in issue: that is, did the defendant receive due process.

There is no procedure readily available to a defendant for testing whether due process was afforded in the district court. Massachusetts statutes do not provide any method for reviewing errors of law which may have been committed during the course of a trial in the district court. Mann v. Commonwealth, 1971 Mass.Adv.Sh. 1027, 271 N.E.2d 331, 333. The Supreme Judicial Court will exercise its statutory powers of superintendence with respect to such issues "only in the most exceptional circumstances." Corey v. Commonwealth, 1973 Mass.Adv.Sh.1237, 1238, 301 N.E.2d 450, 452. In short, a defendant has no readily available opportunity to test the adequacy of the district court hearing itself.

There is no question that the Commonwealth has a legitimate interest, if not responsibility, under its police powers to keep drunk drivers off the road. My conclusions with respect to the narrow legal issues of this case would not thwart that purpose. There are adequate procedures available to the registrar for suspending the licenses of unfit drivers, prior to and independent of any judicial proceeding. If the registrar is of the opinion that there is necessity for immediate action, he can proceed under M.G.L. c. 90, § 22 (1973 Supp.) allowing suspension of a license when there is "reason to believe that continuing operation by such holder is and will be so seriously improper as to constitute an immediate threat to the public safety," § 22(a), or there is "reason to believe the holder thereof is an incompetent person to operate motor vehicles, or is operating a motor vehicle improperly," § 22(b).

Procedure under Section 22 affords the licensee written notice that his license may be suspended and an opportunity to be heard at a hearing before the registrar. Immediate suspension of a license prior to notice and hearing is permitted under Section 22(a) where there is thought to be an immediate threat to the public. Notice and hearing is required soon thereafter.[4]

tion that a conviction, once declared invalid, can still serve as a predicate for license revocation. Rather the Fourth Circuit refused, on retroactivity grounds, to invalidate the conviction in that case. There was, therefore, no reliance on an invalid conviction.

Further, the court emphasized that it was dealing with a situation "in which the conviction provides *merely the possibility* of a basis for a loss of a civil right in a subsequent civil proceeding . . . " (emphasis added). 485 F.2d, at 710. In the case before us, the loss is not merely possible, it is mandatory.

Lastly, it is significant to note that *Marston* involved a conviction at the second tier (the counterpart of our Superior Court) of the Virginia system, one subject to judicial review by direct appeal. The conviction relied on in the instant case, however, is a nullity once it is appealed and is subject to no judicial review.

3. Moran v. Bench, 353 F.2d 193 (1 Cir. 1965), cited by the majority at p. 112, is clearly distinguishable from the instant case. In *Moran* the registrar was acting under his discretionary powers and not under a legislative mandate. There, he relied on a medical diagnosis, not a record of conviction which is a nullity subject to no review.

4. Such exception to due process requirements in emergency situations has been approved by the U. S. Supreme Court. See Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

These procedures are more than adequate to protect the interests of the public without running the risk of undermining or impinging on the rights of an individual.

Nothing in this opinion should be construed as inferring in any way a belief on my part that a registrar's decision is more competent or trustworthy than that of a court.[5] What is intended is a recognition that, under the statutory scheme in Massachusetts, the determination of who shall be permitted to drive is an executive responsibility that has been delegated to the registrar. Implicit in any reasonable concept of due process is that revocation of such an important liberty as a driver's license requires, at some point, a hearing before the registrar, which hearing is subject to judicial review.

Under M.G.L. c. 90, § 24(1)(b), the registrar's discretion is taken away from him. He is required to revoke on the basis of something other than his own examination of the circumstances involved. The affected driver has no opportunity to appear before the registrar. The registrar may only determine whether a record of conviction exists. The validity of such conviction is immaterial with respect to the issue of revocation.

This statutory procedure, therefore, is a departure from the traditional concepts of due process that would provide an opportunity to place the operative facts before the person charged with revocation authority and responsibility.[6] On its face, it constitutes a dilution of due process otherwise available when the registrar exercises his general statutory powers to revoke a license. The question, therefore, is under what circumstances can such a departure be justified under traditional notions of due process.

I have already taken the position that due process, under such a procedure, requires the record of conviction to be something more than an unconstitutional nullity. Even assuming the constitutionality of the two-tier system, when a conviction is to be the *sole basis* for mandatory revocation by the registrar, the judicial proceeding which led to such conviction must itself have met due process requirements. A necessary corollary is, therefore, that such conviction must have been one based on a record subject to judicial review in order to make possible a determination as to the issue of due process. The district court hearing in question does not meet this standard for, as has already been emphasized, the district court hearing itself is not subject to any review.

The fact that the defendant could possibly have due process problems, as well, in a hearing before the registrar is immaterial to the legal issues in this case. The pivotal issue before us is under what circumstances is it permissible for a registrar to depart from traditional concepts of due process in basing a revocation decision on something other than a "first hand" review of the underlying circumstances involved. When the registrar is required to rely solely on a record of conviction, fundamental fairness requires that the reliability of such conviction be subject to judicial review.

I am not troubled by the fact that the license may continue to be suspended during the course of the registrar's appeal process.[7] There, traditional con-

---

5. The majority's assertion that I am of the opinion a Registry hearing "would be preferable to a judicial hearing" (majority opinion p. 112) is an apparent misconception.

6. The Supreme Court has explicitly recognized a due process right to appear personally before the official having the authority to make a final determination as to welfare eligibility. Goldberg v. Kelly, 397 U.S. 254, 268, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

7. A license holder dissatisfied with the registrar's decision can obtain a *de novo* hearing before a board of appeal. M.G.L. c. 90, § 28. The appeal does not operate as a stay of the registrar's decision. M.G.L. c. 90, § 28. The decision of the board of appeal is

**116**

cepts of due process are at least facially met for the registrar's revocation is based on a first hand analysis of the underlying circumstances involved, see Goldberg v. Kelly, 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and not merely on a docket entry of a district court hearing not subject to review. Under such circumstances the public's interest in safe streets can be said to outweigh whatever due process impingement may be possible.

Counsel for the plaintiff has advised us that the constitutionality of the two-tier system itself will be squarely before the Supreme Judicial Court during its April sitting. For the reasons enumerated, I would deny defendant's motion to dismiss, and would stay any further proceedings in this case until that court had an opportunity to deal with these important legal issues that will so directly affect the administration of justice in the courts of the Commonwealth.[8]

subject to judicial review pursuant to the State Administrative Procedure Act, M.G.L. c. 30A, § 14 (1973 Supp.). See Poitras v. Board of Appeal on Motor Vehicle L. P. & B., 356 Mass. 510, 254 N.E.2d 412 (1969).

8. In view of my suggested disposition of this matter, I find it unnecessary to discuss plaintiff's alternative constitutional claim with respect to the existing mandatory procedure itself. I do point out, however, that the same rationale offered above with respect to the situation that would arise should the Supreme Judicial Court declare the two-tier system unconstitutional may well be applicable even absent such a constitutional determination.

An appeal from a district court finding, "wipes out the lower court action entirely. In the case of a finding of guilt and sentence, it wipes out both and in a case of plea and sentence it wipes out the sentence. After an appeal the finding or sentence of the District Court has no force and effect for any purpose on a judge of the Superior Court." Mann v. Commonwealth, 271 N.E. 2d 331, 335 (1971). In short, therefore, once appealed a district court conviction is a nullity.

Under the existing system, revocation is based solely on a docket entry which is of

no legal force and effect. There is no record on which plaintiff can seek review of the district court hearing on due process or any other legal grounds. His only available recourse is to suffer the loss of his license until the conclusion of a second hearing in the Superior Court. All this solely because of a docket entry which is "wipe[d] out . . . entirely." Mann v. Commonwealth, 271 N.E.2d at 335.

Faced with a disbarment situation involving issues substantially similar to those in the instant case, the Seventh Circuit held that:

> [I]f the conviction itself is to be used to show that the appellant actually committed the underlying acts which are of such a nature as to form the basis for disbarment or suspension . . . that conviction must have reached finality, at least to the extent of exhaustion of direct appeals. (emphasis supplied)

In Re Ming, 469 F.2d 1352, 1354 (7 Cir. 1972). Although Ming was decided on that court's supervisory powers, its rationale is of possible constitutional import.

See also Pino v. Landon, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955); Will v. Immigration and Naturalization Service, 447 F.2d 529 (7 Cir. 1971); State v. DeBery, 150 Me. 28, 103 A.2d 523 (1954).