PROPAC-MASS, INC. *vs.* COMMISSIONER OF INSURANCE.

Suffolk. January 12, 1995. - April 11, 1995.

Present: LIACOS, C.J., WILKINS, NOLAN, & GREANEY, JJ.

*Commissioner of Insurance. Insurance*, Reciprocal insurance exchange.
*Administrative Law*, Hearing. *License. Collateral Estoppel. Due Process of Law*, Hearing.

The Commissioner of Insurance had authority under the express terms of
G. L. c. 175, § 5, to revoke the license of an attorney-in-fact of a reciprocal insurance exchange [48-49], and a prerevocation hearing was not
required under either that statute or G. L. c. 30A, § 13, the State Administrative Procedure Act. [49]

The Commissioner of Insurance did not act arbitrarily or capriciously or
deny the holder of a license as attorney-in-fact of a reciprocal insurance
exchange the right to due process of law in revoking the license under
the provisions of G. L. c. 175, § 5, where the commissioner properly
relied on the findings and rulings of a Superior Court judge in a prior
civil action brought by the insurance exchange against the licensee.
[49-50]

The immediate effect of a revocation by the Commissioner of Insurance of
a license held by the attorney-in-fact of a reciprocal insurance exchange
was properly authorized by G. L. c. 175, § 5. [50-51]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on January 11, 1994.

The case was considered by *Lynch*, J.

*Edward B. Deutsch*, of New Jersey (*Raymond J. Kenney,
Jr.*, with him) for the plaintiff.

*Thomas A. Barnico*, Assistant Attorney General, for the
Commissioner of Insurance.

WILKINS, J. Pursuant to G. L. c. 175, § 5 (1992 ed.), the
plaintiff (Propac) appealed from the revocation by the defendant Commissioner of Insurance (commissioner) of its license as attorney-in-fact for Massachusetts Employers Insur-

ance Exchange (Exchange), a reciprocal insurance exchange (see G. L. c. 175, §§ 94A-94M [1992 ed.]) that provides workers' compensation insurance to its employer subscribers. A single justice of this court considered the case on the complaint, the answer, memoranda, and argument of counsel, and without opinion denied the petition under G. L. c. 175, § 5. Propac appeals.

On Friday, December 31, 1993, the commissioner revoked Propac's license without a hearing, effective immediately. The commissioner's notice of revocation of the license was based on the decision in the Superior Court action brought by members of the Exchange and others against Propac. That decision is the subject of our opinion, released today, in *Massachusetts Employers Ins. Exch.* v. *Propac-Mass, Inc.*, *ante* 39 (1995).

The commissioner stated in her revocation notice that, on December 9, 1988, Propac had been licensed to execute contracts of reciprocal or inter-insurance for the Exchange's subscribers and that on that date Propac and the Exchange, through its board of advisors, had entered into a management services (or attorney-in-fact) contract. The commissioner noted that in December, 1992, the Exchange, through its board of advisors, had given notice of termination of the attorney-in-fact agreement, effective December 31, 1993, and that on December 17, 1993, she had licensed another entity to act as the Exchange's attorney-in-fact, effective January 1, 1994.

The commissioner's revocation notice continued:

> "Propac's legal relationship with [the Exchange] and its subscribers is thus terminated on December 31, 1993, rendering impossible Propac's performance of the duties of [attorney-in-fact] for [the Exchange] as contemplated by the license granted to [the Exchange] on December 9, 1988. The court's findings and rulings are clear and mean that Propac has no exchange with which to do business after the December 31, 1993 termination date. Also, because it is not itself an insurer

within the meaning of c. 175, it cannot provide the necessary and promised coverage to [the Exchange] subscribers it would purport to represent as [attorney-in-fact]. Thus, Propac's license, which is particular to [the Exchange], does not authorize Propac to do the business of [attorney-in-fact] for [the Exchange], because Propac, after December 31, 1993, will have no legal relationship with [the Exchange] or its subscribers."

The commissioner added that "in a meeting held at the Executive Office of Consumer Affairs on December 30, 1993, immediately following the issuance of the Superior Court's decision, Propac indicated to me that it would pursue continued [attorney-in-fact] business with [the Exchange] after December 31, 1993, servicing subscribers it claims to represent because Propac still holds a valid license."

The commissioner continued her discussion of the circumstances as follows:

"The Division of Insurance has received numerous inquiries from anxious [Exchange] subscribers who have expressed confusion about their workers' compensation insurance contract renewals and concern about the future of that coverage and of the Exchange itself. Propac's conduct clearly indicates that there will be no smooth transition to a new [attorney-in-fact]. Rather, Propac's posture threatens the stability of the Exchange. The subscribers' coverage is jeopardized and may result in financial liability to the subscribers and a disruption in services and benefits of injured workers to whom the Exchange is obligated. I have grave concerns about the ability of [the Exchange] to conduct its business as an exchange after December 31, 1993 because control and possession of the Exchange's assets, claims files and other financial and administrative materials improperly rests, especially in light of the court's decision, with Propac. Propac's expressed intention to continue to act as [the Exchange's attorney-in-fact] after

December 31, 1993, is indicative of Propac's intention not to participate in the orderly transition by [the Exchange] to a new [attorney-in-fact]."

The commissioner concluded: "Propac has engaged, and has indicated its intent to continue to engage, in conduct which renders its further transaction of business hazardous to the public and the subscribers of [the Exchange]. G. L. c. 175, s. 5 and s. 94F require me to revoke a company's license when these grounds are demonstrated."

The license was revoked effective immediately. Notice of the revocation was sent that day by registered mail to Propac. This action was commenced eleven days later.

1. We consider first Propac's argument that the commissioner lacked authority under G. L. c. 175, § 94F, to revoke its license, and that certainly the commissioner could not lawfully revoke that license without a hearing.

The commissioner, if satisfied that the conditions for the issuance of a license have been met, must issue a license to transact business to an attorney-in-fact, authorizing the attorney-in-fact to execute for the subscribers such contracts of reciprocal or inter-insurance as G. L. c. 175 authorizes. G. L. c. 175, § 94F. The license issued to the attorney-in-fact "shall be subject to section five" of G. L. c. 175. *Id.* Section 5, which concerns the revocation or suspension of licenses and does not provide for a prerevocation agency hearing, by its terms applies only to a foreign company, that is, one formed by authority of another State or country (G. L. c. 175, § 1 [1992 ed.]). An attorney-in-fact, however, need not be a company formed elsewhere. See G. L. c. 175, § 94A, defining "Attorney in fact" as "an individual, partnership or corporation." An attorney-in-fact may also be domestic. Cf. G. L. c. 175, § 94B ("The principal office of the attorney in fact shall be maintained at such place as is designated by the subscribers in the power of attorney").

Because the Legislature has directed that each license of an attorney-in-fact is subject to § 5, we do not hesitate to apply § 5 to all attorneys-in-fact licensed pursuant to § 94F,

including an attorney-in-fact that is not a foreign company. It is not reasonable to conclude that its reference to § 5 was designed to authorize the suspension or revocation of the license of only those attorneys-in-fact that happen to be foreign companies. Section 94F concerns all licenses of attorneys-in-fact issued under that section. The commissioner, therefore, acted properly in relying on § 5 to revoke Propac's license.

Propac argues next that, in any event and quite apart from § 5, the State Administrative Procedure Act (G. L. c. 30A [1992 ed.]) provides that Propac's license could not properly be revoked without first offering it a hearing. Section 13 of G. L. c. 30A provides that "[e]xcept as otherwise provided in this section, no agency shall revoke . . . any license unless it has first afforded the licensee an opportunity for hearing in conformity with" certain sections of G. L. c. 30A. Among the circumstances to which the hearing requirement does not apply is the "revocation of the license of a foreign insurance company by [the] commissioner under authority of [G. L. c. 175, § 5]," if the revocation is on the ground, among other things, that the company's "condition or management is such as to render its further transaction of business hazardous to the public or its policyholders." For the reasons that we have already stated in concluding that § 5 applies to Propac, we conclude that the exception stated in G. L. c. 30A, § 13, applies to all license revocations of attorneys-in-fact licensed under G. L. c. 175, § 94F. Therefore, G. L. c. 30A, § 13, did not require a prerevocation agency hearing in this case.

2. Propac next argues that, if G. L. c. 175, § 5, applies to the revocation of its license and the statutes permit the commissioner to act without a prerevocation hearing, § 5 violates its right to due process of law under the State and Federal Constitutions. Section 5 does not provide for a prerevocation hearing, but only for notice of the revocation. It further provides the right, within ten days of the effective date of the revocation, to petition a single justice of this court, as Propac did, for a summary hearing and review of the action of the commissioner.

We need not determine whether § 5 meets constitutional due process requirements by furnishing an aggrieved licensee only a summary judicial hearing after the revocation of its license. Propac had already had a judicial hearing in the Superior Court concerning the circumstances on which the commissioner based her revocation decision. See *Massachusetts Employers Ins. Exch.* v. *Propac-Mass, Inc., supra.* On principles of collateral estoppel, Propac was bound by the findings of fact in the Superior Court case even if the Superior Court judgment was on appeal. Certainly due process of law principles did not entitle Propac to two hearings. See *Brunson* v. *Wall*, 405 Mass. 446, 449-451 (1989); *Haran* v. *Board of Registration in Medicine*, 398 Mass. 571, 575-581 (1986). Cf. *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 589-590 (1981) (revocation of motor vehicle license); *Almeida* v. *Lucey*, 372 F. Supp. 109, 112 (D. Mass.) (same), aff'd, 419 U.S. 806 (1974).

The commissioner did not deny Propac's right to due process of law nor did she act arbitrarily or capriciously in revoking Propac's license. The commissioner properly relied on the findings and rulings that the trial judge had made, and that we have now upheld, in *Massachusetts Employers Ins. Exch.* v. *Propac-Mass, Inc., supra.*

Finally, Propac complains that it did not receive notice of the revocation of its license before the revocation was purportedly effective. In the case of a revocation on the ground that a company violated a provision of law or failed to comply with its charter, the revocation may not be effective in less than ten days from the date of issue of the notice. G. L. c. 175, § 5. Revocations for other reasons stated in § 5, including the reason in this case ("its condition or management is such as to render its further transaction of business hazardous to the public or its policyholders"), have no such time limitation. We see no reason why, in such a case, the commissioner cannot properly announce that the "license is revoked effective immediately." Nor do we see any reason to declare the revocation invalid, even if immediate revocation

were not authorized. Propac received the notice within three days on Monday, January 3, and we are not concerned with events between the date of the revocation and January 3.

We affirm the order of March 29, 1994, denying Propac's petition (which we construe as a judgment affirming the revocation of the attorney-in-fact license of Propac-Mass, Inc.).[1]

*So ordered.*

---

[1]Propac's complaint in its heading stated that it contained a request for declaratory relief, but no such request appears in the body of the complaint. Therefore, although the single justice denied the request for declaratory relief, we do not direct that a declaration of rights be included in a new judgment.